IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **CRIMINAL ACTION** |
| | : | **NO. 19-611-02** |
| **KAREN CONNELLY** | : | |

**MEMORANDUM**

**SCHMEHL, J.**   */s/JLS*                                                                  **OCTOBER 18, 2021**

On November 5, 2019, Defendant plead guilty to one count of bank fraud and aiding and abetting bank fraud, in violation of 18 U.S.C. § 1344. On September 24, 2020, the Court imposed a total term of imprisonment of 48 months. Presently before the Court is the Defendant's counseled motion for compassionate release. For the reasons that follow, the motion is denied.

The government informs the Court that Defendant is serving her sentence at Alderson Federal Prison Camp in West Virginia with an expected release date of April 8, 2024. She has served approximately ten months and has not yet earned credit for good conduct time. She has not committed any disciplinary infractions during her time in custody.

In her Motion, Defendant asks the Court to grant her compassionate release under 18 U.S.C. § 3582 (c)(1)(A)(i) and modify her sentence to home confinement because she is concerned of contracting COVID-19 in an institutional setting.[1] Despite

---

[1] This Court does not have authority to grant a transfer to home confinement, or review the BOP's administrative decision regarding that issue. See 18 U.S.C. § 3621(b) (BOP's designation decision is not subject to judicial review). See also, e.g., *United States v. Rodriguez-Collazo*, 2020 WL 2126756, at *2-3 (E.D. Pa. May 4, 2020) (Younge, J.); *United States v. Pettiway*, No. CR 08-129, 2020 WL 3469043, at *2 (E.D. Pa. June 25, 2020) (Bartle, J.); *United States v. Torres*, 2020 WL 3498156, at *5-6 (E.D. Pa. June 29, 2020) (Kearney, J.); *United States v. Cruz*, 2020 WL 1904476, at *4 (M.D. Pa. Apr. 17, 2020); *United States v. Mabe*, 2020 U.S. Dist. LEXIS 66269, at *1 (E.D. Tenn. Apr. 15, 2020) ("the CARES Act places decision making authority solely within the discretion of the Attorney

1

having received both doses of the Moderna vaccine, Defendant claims she is particularly vulnerable to contracting COVID-19 because she is 67 years old, suffers from stage IV kidney disease, Type II diabetes and hypertension. Defendant claims she has been "of good behavior during her time in FPC Alderson, has a verifiable release plan, is not being held on a violent, sex offense, or terrorism-related charge, does not have a detainer, is a minimum security inmate, presents a low risk of recidivism, and has not been involved in gang activity or other violent behavior while she has been incarcerated." ECF 37 at p. 4.

## II. LEGAL STANDARD

As a general rule, a district court may not modify a defendant's sentence after it has been imposed. 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 825, (2010). However, the First Step Act provides for a compassionate release exception to that general rule, stating that: (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility[2], whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that— (i) extraordinary and compelling reasons warrant such a reduction; and that such a reduction is consistent with applicable policy

---

General and the Director of the Bureau of Prisons. . . . This Court therefore does not have power to grant relief under Section 12003 of the CARES Act.").

2  There is no dispute that Defendant has exhausted her administrative rights.

statements issued by the Sentencing Commission[.] 18 U.S.C. § 3582(c)(1)(A); see also U.S.S.G. § 1B1.13 (stating that the court may reduce a term of imprisonment if it finds, after consideration of the factors in § 3553(a), that "[e]xtraordinary and compelling reasons warrant the reduction," "[t]he defendant is not a danger to the safety of any other person or to the community," and "[t]he reduction is consistent with this policy statement").

Although neither U.S.S.G. § 1B1.13 nor Congress defines the term "extraordinary and compelling," the Sentencing Commission's commentary to § 1B1.13, provide guidance. See U.S.S.G. § 1B1.13 cmt. n.1. The commentary provides that "extraordinary and compelling reasons" can include (1) certain specified serious medical conditions (a terminal illness or a serious medical condition "that substantially diminishes the ability of the defendant to provide self-care" in prison and "from which he or she is not expected to recover"); (2) the defendant's advancing age (over 65), in combination with a serious deterioration of his health and his successful completion of at least 10 years or 75% of his sentence; (3) the defendant's family circumstances, and (4) "[o]ther [r]easons ... [a]s determined by the Director of the Bureau of Prisons" to be extraordinary and compelling, either alone or in combination with the three prior reasons. U.S.S.G. § 1B1.13, cmt. n.1.

**DISCUSSION**

According to Defendant's medical records, Defendant does not suffer from a terminal illness. Nor does she have an incurable, progressive illness or debilitating injury that causes her to be capable of only limited self-care or confined to a bed or chair more than 50% of her waking hours. Her medical records show that she is fully ambulatory and that her ailments are adequately controlled my medication administered by FCP-Alderson. In fact, Defendant states that despite her current maladies, she is working five

3

days per week in the prison library cataloguing books, she has completed an Adult Education Class and is enrolled in two more classes as well as in a Bible study group. ECF 37 at p. 3.

Even more significant is that on April 19, 2021 and May 17, 2021, the Bureau of Prisons administered to Defendant **both** doses of the COVID-19 vaccine produced by Moderna. As this Court has explained, "Now that COVID-19 vaccinations are being administered throughout the Bureau of Prisons, compassionate release motions generally lack merit." *United States v. Reed*, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021) (Schmehl, J.).

Courts thus routinely deny relief to an inmate who has been vaccinated. *See, e.g.*, *United States v. Hannigan*, 2021 WL 1599707, at *5-6 (E.D. Pa. Apr. 22, 2021) (Kenney, J.) ("Other courts in the Third Circuit have agreed that the protection provided by an authorized COVID-19 vaccination reduces the risk of serious illness from COVID-19 to such a degree that the threat of the pandemic alone cannot present an extraordinary and compelling reason for compassionate release.") (citing cases); *United States v. Roper*, 2021 WL 963583, at *4 (E.D. Pa. Mar. 15, 2021) (Kearney, J.) ("The risk posed to an inoculated Mr. Roper is not an extraordinary and compelling reason for his release."); *United States v. Jones*, 2021 WL 1561959, at *1 (E.D. Pa. Apr. 21, 2021) (McHugh, J.) ("As the Government itself acknowledges, the scientific consensus surrounding vaccines can change. . . . But as of now, the available data confirms the extreme effectiveness of the vaccines."); *United States v. Willis*, No. 10-416, ECF 239 (E.D. Pa. May 3, 2021) (Padova, J.); *United States v. Newsuan*, 2021 WL 2856509, at *4 (E.D. Pa. July 7, 2021) (Pratter, J.) (68-year-old defendant who presents diabetes, obesity, and hypertension does not present extraordinary circumstance in light of vaccination); *United States v. OteroMontalvo*, 2021 WL 1945764, at *3 (E.D. Pa. May

4

14, 2021) (Schmehl, J.) (41-year-old defendant presents asthma and obesity, but has been vaccinated; the court dismisses his complaints regarding prison management, stating, "The BOP and FCI Fort Dix administering vaccinations shows that they are taking the appropriate precautions to the COVID-19 pandemic and are safeguarding inmates."); *United States v. Kamara*, 2021 WL 2137589 (E.D. Pa. May 26, 2021) (Bartle, J.); *United States v. Peterson*, 2021 WL 2156398, at *2 (E.D. Pa. May 27, 2021) (Joyner, J.) (the defendant "suffers from hypertension, asthma, and prediabetes and he is obese and a former smoker," but "[g]iven the significant protection the [Johnson and Johnson] vaccine offers and the declining rates of COVID-19 infections in prisons, we (like many other courts) do not find that Mr. Peterson has presented extraordinary and compelling circumstances at this time]."); *United States v. McBriarty*, 2021 WL 1648479, at *6 (D. Conn. Apr. 27, 2021) (Underhill, J.) ("Given current understanding, the Pfizer vaccine is so effective at preventing serious illness from COVID-19 that the threat of McBriarty's becoming seriously ill is miniscule—and certainly not extraordinary and compelling."); *United States v. Robinson*, 2021 WL 1723542, at *4 (W.D. La. Apr. 30, 2021) (Doughty, J.) (given vaccination, "even though Robinson does have serious medical conditions, there is no extraordinary and compelling reasons supporting compassionate release.").

     The fact that Defendant has been fully vaccinated significantly mitigates the risk of Defendant contracting COVID-19. As a result, the significantly diminished risk of Defendant contracting COVID-19 no longer presents an extraordinary or compelling reason for her release.

     Defendant next cites her advancing age of 67 as an extraordinary and compelling reason for her release. While the Sentencing Commission's commentary does recognize advancing age as an extraordinary and compelling reason for compassionate

release, it does so only in combination with a serious deterioration of health and the inmate's successful completion of at least 10 years or 75% of her sentence. Here, Defendant has not demonstrated a serious deterioration of her health nor that she has served 75% of her sentence. In fact, she has served less than 25% of her sentence.

Defendant also cites family circumstances as an extraordinary and compelling reason for her release. Specifically, Defendant claims that her husband of 42 years was recently diagnosed with Stage IV Diffuse Large B Cell Lymphoma and has begun chemotherapy treatments. Defendant claims she is the only relative available to provide care to her husband. The Sentencing Commission's commentary does recognize the incapacitation of the defendant's a spouse as an extraordinary and compelling reason for release but **only** in the case where the defendant would be the **only** available caregiver for the spouse. U.S.S.G. § 1B1.13, cmt. N.1. The government contends that Defendant has a 40-year old adult daughter who lives in the same town as her father and therefore could serve as a caregiver. Defendant does not refute this representation. Therefore, family circumstances does not qualify as an extraordinary and compelling reason for Defendant's release.

Even if Defendant could demonstrate an elevated medical risk or extraordinary and compelling family circumstances, a review of the § 3553(a) factors, would result in the denial of Defendant's motion. Defendant's offense in this matter was extremely serious, as she committed bank fraud for an extended period of at least 13 years which resulted in a loss to Fulton Bank of over 25 million dollars. Defendant used her position as controller for Worley and Obetz to falsify the company's monthly financial statements and instructed her successor how to do the same. Without Defendant's accounting knowledge and contributions, the scheme may never have been successful. Because of the extensive nature of the scheme and length of time Defendant engaged in her

unlawful acts, it is doubtful that Fulton Bank will ever recover these losses. While the Defendant claims she did not intend to harm her co-workers, the fact remains that Defendant's actions also resulted in the bankruptcy of the Worley & Obetz family-owned heating business and the loss of 275 jobs. As detailed in the victim impact statements, the loss of these jobs has had a devastating emotional and financial impact on the former employees. Defendant's sentence also must serve as a deterrent, both to Defendant in the future and to others who are considering engaging in bank fraud. Finally, although Defendant provided significant cooperation to the government, that cooperation was reflected in the Court's 48-month sentence which was substantially below the federal guideline range.

The Defendant fails to demonstrate how release ten months into a 48-month sentence for her multi-year fraud scheme reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. See 18 U.S.C. § 3553(a)(2)(A). In fact, release under these circumstances would have exactly the opposite effect. A consideration of the factors above shows that release at this point is inappropriate based on the offense of conviction, the Defendant's managed medical condition, and the amount of time remaining on the Defendant's sentence.

The Court is not unsympathetic to Defendant's plight. But ramifications of health issues for a prisoner and the inability to care for an incapacitated spouse can clearly be avoided by not engaging in criminal activity in the first place.